IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MINERVA DAIRY, INC., and ADAM MUELLER,

                        Plaintiffs,

   v.                                                        OPINION & ORDER

BEN BRANCEL, BRAD SCHIMEL, and                  17-cv-299-jdp
PETER J. HAASE,

                        Defendants.

---

Plaintiff Minerva Dairy, Inc., under its president, plaintiff Adam Mueller, produces Amish butter and cheese in small, artisanal batches at its Ohio dairy. It filed this lawsuit challenging the constitutionality of Wis. Stat. § 97.176, which requires all butter offered for sale within Wisconsin to be graded by the U.S. Department of Agriculture or a Wisconsin-licensed butter grader. Minerva Dairy alleges that this statute violates the Commerce Clause, Equal Protection Clause, and Due Process Clause of the U.S. Constitution. Defendants, several Wisconsin officials whom the court will refer to as the state, disagree. Both sides move for summary judgment. Dkt. 25 and Dkt. 33. Because the statute is rationally related to Wisconsin's legitimate interest in helping its citizens make informed butter purchases, the court will grant summary judgment to the state and dismiss Minerva Dairy's claims.

UNDISPUTED FACTS

Except where noted, the following facts are undisputed.

## A. The butter-grading law

In 1953, the Wisconsin legislature enacted a butter-grading law now codified at Wisconsin Statute section 97.176. The law requires butter offered for retail sale within the state to be labeled with a grade: either a Wisconsin grade or a USDA grade. The grade must be determined through an "examination for flavor and aroma, body and texture, color, salt, package and . . . other tests or procedures . . . for ascertaining the quality of butter." 97.176(3).

The Wisconsin Department of Agriculture, Trade, and Consumer Protection (DATCP) provides standards for the Wisconsin butter grading system. Wis. Stat. § ATCP Ch. 85. These standards mirror the USDA standards. U.S. Dep't of Agric., *U.S. Standards for Grades of Butter*.[1] For example, Grade AA butter must "be made from sweet cream of low natural acid," "possess a fine and highly pleasing butter flavor," have no more than a "slight" "feed or culture flavor," and have no more than a one-half "disrating[] in body, color and salt characteristics." § ATCP 85.03(1).

Butter that bears a Wisconsin grade label must be graded by a Wisconsin-licensed butter grader, who must sample each batch. To obtain a license, an individual must send the DATCP $75 and a written form listing, among other things, "the location where the grading is to be done." § ATCP 85.07. The individual must then appear at "a location in Wisconsin, as convenient to the applicant as possible," to take written and practical examinations to demonstrate proper grading of butter. Dkt. 48, ¶ 78. The individual must answer at least 70 percent of the written examination correctly and perform at least 70 percent of the practical examination correctly (as measured against the examiner's grading of the same samples) to

---

[1] *Available at* https://www.ams.usda.gov/sites/default/files/media/Butter_Standard%5B1%5D.pdf.

obtain a license. Once licensed, the individual must "pay a biennial license fee of $75." § ATCP 85.07(2). Before April 2017, the DATCP did not have an official policy about whether Wisconsin-licensed butter graders could grade butter at out-of-state facilities, but it had "a nonwritten understanding" that they could not do so. Dkt. 42 (Haase Depo. at 28:24-29:2). It now allows that practice.

The DATCP ensures compliance with the butter-grading law in several ways. If the DATCP learns of a retail store offering ungraded butter for sale, it sends a warning letter to the store. Stores generally comply with the law by removing the ungraded butter from their shelves after receiving a warning letter. The DATCP's sanitarians also randomly sample butter at manufacturing plants and stores within the state to confirm that the labeled grade is correct. If there is a discrepancy between the grade assigned by the sanitarian and the labeled grade, the DATCP sends a warning letter to the butter manufacturer. Because of the "inherently subjective" nature of butter grading, the DATCP allows for arbitration of discrepancies by a panel of graders. Dkt. 50, ¶ 19.

**B. Minerva Dairy**

Minerva Dairy is a family-owned dairy company that has been operating since 1884, when it first opened in Wisconsin. It moved operations to Ohio in 1935. Today, its 75 employees produce Amish butter and cheeses. It produces butter in "small, slow-churned batches using fresh milk supplied by pasture-raised cows." Dkt. 50, ¶ 4.

Minerva Dairy sold its butter in Wisconsin without incident until early 2017, when the DATCP received an anonymous complaint about ungraded Minerva Dairy butter being sold at a Wisconsin retail store, Stinebrink's Lake Geneva Foods. A DATCP sanitarian went to Stinebrink's, verified that ungraded butter was being offered for sale, and asked that it be

removed. On February 28, 2017, the DATCP followed up with a warning letter to Stinebrink's and Minerva Dairy notifying them of the butter-grading law and asking for "your future compliance with the State of Wisconsin related to butter grade labeling requirements." Dkt. 19-1. As a result, Minerva Dairy stopped selling its butter at retail stores in Wisconsin. A few months later, Minerva Dairy filed this lawsuit, alleging that Wisconsin's butter-grading law violates its rights under the Commerce Clause, Equal Protection Clause, and Due Process Clause. The court has subject matter jurisdiction over Minerva Dairy's claims under 28 U.S.C. § 1331 because they arise under federal law.

ANALYSIS

Both sides move for summary judgment on all three of Minerva Dairy's claims. Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'" *Wis.*

4

*Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

Minerva Dairy contends that the butter-grading law deprives it and all artisanal butter makers of their rights without due process of law and denies them equal protection of the laws, in violation of the Fourteenth Amendment. The parties agree that both claims "trigger[] only the most lenient form of judicial review: the law is valid unless it lacks a rational basis." *Monarch Beverage Co. v. Cook*, 861 F.3d 678, 681 (7th Cir. 2017). So the court will analyze them together.

Rational-basis review is "a notoriously 'heavy legal lift for the challenger.'" *Id.* (quoting *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015)). The challenged law comes "with 'a strong presumption of validity." *Id.* at 683 (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 314 (1993)). Minerva Dairy, as the challenger, "must shoulder the heavy burden 'to negative every conceivable basis which might support it.'" *Id.* (quoting *Beach Commc'ns*, 508 U.S. at 315)).

The state may require grade labels on retail butter packages so that consumers could purchase butter with confidence in its quality. Consumer protection is a legitimate governmental interest. More specifically, Wisconsin has a legitimate interest in ensuring that its citizens aren't duped into buying "mealy," "musty," or "scorched" butter (to name a few of the characteristics included in the grading system). The state could believe that required butter grading would result in better informed butter consumers. Minerva Dairy argues that some might disagree with the state's preferences and that it would be better to label butters according to their characteristics, rather than a composite grade. It also points out that Wisconsin doesn't require grading of other packaged products sold at retail, such as honey. Wisconsin's consumer-protection regulations may not be perfect, but "[t]he fact that other means are better suited to

5

the achievement of governmental ends . . . is of no moment under rational basis review." *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 77 (2001). Minerva Dairy has not shown that the butter-grading law lacks a rational basis, so the law does not violate the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment.

That leaves Minerva Dairy's Commerce Clause claim. The Commerce Clause empowers Congress to "regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. It does not explicitly limit state regulation, "but the Supreme Court has long held that a "dormant" or "negative" component of the Clause implicitly limits the states from 'erecting barriers to the free flow of interstate commerce' even where Congress hasn't acted." *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017) (quoting *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 440 (1978)).

The Seventh Circuit has explained that state laws "fall into one of three categories for purposes of dormant Commerce Clause analysis." *Id.* First are those laws that discriminate on their face against interstate commerce. They are "presumptively unconstitutional." *Id.* Second are those laws that indirectly or incidentally discriminate against interstate commerce. These facially neutral laws are analyzed under the *Pike* test, which balances "the burden imposed on [interstate] commerce" against "the putative local benefits." *Id.* at 502 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). The third category consists of "laws that affect commerce without any reallocation among jurisdictions." *Id.* (quoting *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995)). "In this third category, 'the normal rational-basis standard is the governing rule.'" *Id.* (quoting *Nat'l Paint*, 45 F.3d at 1131). Or as Judge Easterbrook explains, "No disparate treatment, no disparate impact, no problem under the dormant commerce clause." *Nat'l Paint*, 45 F.3d at 1132.

Minerva Dairy contends that Wisconsin's butter-grading law belongs in the second category. But it does not argue that the butter-grading law discriminates against interstate commerce. Instead, it argues that the butter-grading law discriminates against "artisanal butter makers" like itself, whether in-state or out-of-state. *See, e.g.*, Dkt. 45, at 8 ("Requiring butter to be graded forces artisanal butter makers out of the Wisconsin market . . . ."); *id.* at 21 ("It may be true that [the DATCP] has, at least for now, stopped discriminating against out-of-staters."). In fact, it criticizes the state for "incorrectly focus[ing] on the benefits and burdens of out-of-state versus in-state businesses." *Id.* at 6. But that's exactly what a second-category *Pike* analysis must focus on. "*Pike* balancing is triggered *only* when the challenged law *discriminates* against interstate commerce in practical application. *Pike* is not the default standard of review for any state or local law that affects interstate commerce." *Park Pet Shop*, 872 F.3d at 502; *see also id.* at 502 n.1.

The best pitch for the second category might go something like this: Out-of-state butter-grading-license applicants must travel to Wisconsin to take the required examination, whereas in-state butter-grading-license applicants don't have to travel outside the state. Minerva Dairy has waived this argument by failing to develop it, *see United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 & n.4 (7th Cir. 2016), but regardless, it would not trigger analysis under *Pike*. The Seventh Circuit addressed a similar argument in *Park Pet Shop*, a case concerning Chicago's "puppy mill" ordinance. The court explained that even if the ordinance resulted in "Chicagoans [preferring] breeders located closer to the city over those that are farther away," that result "would show only that the ordinance may confer a competitive advantage on breeders that are not too distant from Chicago. . . . [T]hose breeders are as likely to be located in nearby Wisconsin or Indiana as they are in suburban Chicago or downstate Illinois." 872

F.3d at 502–03. In other words, the ordinance does not discriminate against interstate commerce; rather, it discriminates against long-distance commerce, which does not trigger *Pike* balancing. The same is true here. A butter-grading-license applicant from Illinois, for example, need only drive over the state border to take the exam; an applicant from California, on the other hand, must spend more time and money to obtain a license, just as they must spend more time and money shipping their product to Wisconsin stores. That's a geographical fact, not discrimination. Just like Illinois pet breeders in *Park Pet Shop*, Wisconsin butter makers do not enjoy a categorical "competitive advantage over their counterparts outside the state[, so] *Pike* balancing does not apply." *Id.* at 502. The butter-grading law belongs in the third category, and as explained above, it survives rational-basis review. Thus, it does not violate the dormant Commerce Clause.

Minerva Dairy also moves for summary judgment that the DATCP's pre-April 2017 "understanding" of the butter-grading law is unconstitutional. Dkt. 35, at 20. It argues that it is entitled to such a declaration under the voluntary-cessation doctrine. The voluntary-cessation doctrine does not render a law constitutional or unconstitutional. Rather, it applies "when a defendant seeks dismissal of an injunctive claim as moot on the ground that it has changed its practice while reserving the right to go back to its old ways after the lawsuit is dismissed." *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016). If the defendant does not meet "[t]he 'heavy burden' of persuading the court that the challenged conduct 'cannot reasonably be expected to start up again,'" the claim is not moot and the court may address the merits of the claim. *Id.* at 545 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Here, the state does not seek dismissal of any claim as moot. If Minerva Dairy wanted a declaration that the pre-April 2017 understanding of the butter-

grading law is unconstitutional, it did not need to invoke the voluntary-cessation doctrine. It needed to adduce evidence sufficient to establish that the pre-April 2017 understanding violated the Equal Protection Clause, the Due Process Clause, or the Commerce Clause. It did not do so. In fact, it did not adduce any evidence or make any argument concerning the pre-April 2017 understanding other than citing the voluntary-cessation doctrine. So for the reasons stated above, the state is entitled to summary judgment in its favor on all claims.

Finally, the state moves the court to dismiss all claims against Haase and Schimel. Because the court will dismiss all claims against all defendants on the merits, it need not reach this issue.

## ORDER

IT IS ORDERED that:

1. Plaintiffs Minerva Dairy, Inc., and Adam Mueller's motion for summary judgment, Dkt. 33, is DENIED.

2. Defendants Ben Brancel, Brad Schimel, and Peter J. Haase's motion for summary judgment, Dkt. 25, is GRANTED.

3. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered February 5, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge